HORACE ABBOTT ET AL.
vs.
THE BALTIMORE AND
RAPPAHANNOCK STEAM PACKET
COMPANY ET AL.

JULY TERM, 1850.

[PRIORITY OF SEAMEN'S CLAIM FOR WAGES—LIABILITY OF OWNER FOR SUPPLIES—
CONTRACTS OF CORPORATIONS.]

THE crew of a steamboat, plying between the ports of adjoining states, upon
navigable tide water, have a right to proceed for wages due them, by libel
in the District Court of the United States, and have a lien on the vessel, her
tackle and furniture, for such wages.

This right to libel the vessel in the admiralty courts for wages, extends to
every officer and man who assists in navigating her, except the captain.

The officers and seamen have a triple security for their wages, they may have
recourse to the vessel, the owner, and the master.

The seamen's claim for wages, follows the ship and its proceeds, in whose
hands soever they may come, is preferred to all other demands, and consti-
tutes a sacred lien, which continues as long as a single plank of the ship re-
mains, and extends to the whole amount of compensation due the seamen.

The owner is liable for the necessary supplies for the vessel furnished by order
of the master, and if he seeks to escape such liability, he must show, by satis-
factory proof, that the credit was given to others.

If the owner can make out, by evidence, that the credit was given to the master
alone for such supplies ; if it appears, that there was a special promise taken
from him and relied upon, the owner will not be liable.

Corporations can make no contracts which are not necessary, either directly
or indirectly, to effect the objects of their creation, and a corporation itself,
may, in an action brought against it upon such contract, deny its power to
enter into it.

The act of 1829, ch. 42, incorporated the defendant, "for the purpose of estab-
lishing and conducting a line of steamboats and stages, or carriages, between
Baltimore and Fredericksburg, and the several ports and places on the Rap-
pahannock, and on the rivers and waters of the Chesapeake bay, for the con-
veyance of passengers, and transportation of merchandise and other arti-
cles." The company entered into an obligation to aid in an improvement,
the purpose of which, was to open the Rappahannock river, and render it
navigable to the basin, in, or near Fredericksburg. HELD—

That the proposed improvement, being above the Virginia terminus of the route
between which, and Baltimore, the boats were to run, for that reason was
not within the authority conferred upon the company by its charter. And
even if it had been between the termini, it would not have been within the
powers granted by the act of incorporation.

[In this case, a bill was filed by the complainants on the 13th
of October, 1846, alleging the indebtedness of the Steam Packet

Company to various individuals in large sums of money, and its inability to pay such debts, and praying that a receiver might be appointed to take charge of and sell the vessels and other property of the company, and for an injunction to restrain the defendants (trustees to whom the vessels of the company had been assigned) from navigating said vessels, and for further relief.

An injunction was granted on the same day, and a receiver appointed, unless cause to the contrary should be shown by the 10th of the ensuing month.

No sufficient cause to the contrary having been shown, an order appointing a receiver was passed on the 1st of January, 1847, and the receiver so appointed, having qualified by giving bond with approved surety, was authorized and directed, by an order passed on the 4th of the same month, by consent of parties, to make sale of the property which might come into his hands.

The sale was made on the 2nd of February, 1847, and finally ratified on the 17th of March following; and the Auditor having stated and reported an account between the property thus sold and the receiver, numerous exceptions were filed thereto by the parties. The principal questions involved, are upon the claim of the seamen for a prior lien upon the vessel for wages, upon the claims of creditors who furnished supplies for the vessel, upon certain claims founded upon the drafts of the captain on the company, and upon a claim of Alexander J. Marshall, upon a contract entered into by him with the president of said company.

These exceptions being argued, the Chancellor, in giving directions for a further account, says:]

THE CHANCELLOR:

Among the numerous creditors who have come in upon this fund are the seamen who claim the wages due them for navigating and services on board the vessel for the year 1846, and in their behalf it is insisted, that they are entitled to a preference over the other creditors, upon the ground that the wages

of the seamen constitute a lien upon the vessel, or the proceeds derived from the sale of it. This claim will be first considered.

This Steam Packet Company was incorporated by the act of 1829, chapter 42, for the purpose of establishing and conducting a line or lines of steamboats, vessels, and stages or other carriages, between Baltimore and Fredericksburg, and the several ports and places on the Rappahannock, and the other rivers and waters of the Chesapeake bay, for the conveyance of passengers, and transportation of merchandise and other articles.

The purpose, then, for which the company was incorporated, was to open a communication by water between the ports of Maryland and Virginia. The vessels were to ply between the two states in the waters of the Chesapeake bay and the Rappahannock, and there would seem to be no doubt, indeed it is not understood to be questioned, that the seamen have a right, for wages due them in such service, to proceed by libel in the District Court of the United States, and that, as a general rule, they have a lien on the vessel, her tackle and furniture. *Smith* vs. *the Pelein, Gilpin's Rep.*, 203 ; *Wilson* vs. *the Ohio, same book*, 505.

In this last case the libel was for wages on board a steamboat plying between the ports of adjoining states, on a navigable tide river, and the proceeding was sustained ; and it was also decided, that the title to sue in the admiralty for wages, extended to the pilot, the deck hands, the engineer and the firemen.

In short, this right to libel the vessel in the admiralty courts for wages, extends to every officer and man who assists in navigating her except the captain. *Ross* vs. *Walker*, 2 *Wilson*, 264.

The authorities are abundant to show, that the officers and seamen (except the captain) have a triple security for their wages—they may have recourse to the vessel, the owner, and the master. *Bronde, et al.* vs. *Haven, Gilpin's Rep.*, 592, 595 ; 3 *Kent's Com.*, 196, 197.

Chancellor Kent speaks of the seamen's claims for wages as entitled to the favor and protection of the law—that this claim

follows the ship and its proceeds, in whose hands soever they may come, by title or purchase—that it is preferred to all other demands, and constitutes a sacred lien, which continues as long as a single plank of the ship remains, and extends to the whole amount of the compensation due the seamen.

The claims, therefore, of the seamen, in this case, are certainly entitled to be paid out of the proceeds of the vessel, her tackle and furniture, before all others, unless they have in some way deprived themselves of the priority of payment, to which they were so clearly entitled.

Authorities have been cited to show that a contract between the crew and the captain, that the latter alone should be liable for their wages, would be disregarded, as unconscientious, and that, nothwithstanding an express contract to that effect, the seamen might resort to either the vessel or owners for payment. The Chancellor does not think it necessary to decide this question, for conceding that an express contract with the captain that he, and he alone, should be liable to the crew for their wages, would preclude the latter from having recourse to the vessel and owners, he can see nothing in the evidence in this case, which would restrict the crew to but one of the three remedies which the law clearly gives them, in the absence of express contract.

It is not understood to be contended, that exemption can be claimed for the vessel and owners from the demand of the seamen for wages, unless a contract to that effect can be established, but it is contended by those who resist the claim of the seamen in this case, that such a contract, like any other fact, may be proved by circumstances, and that the circumstances of this case are sufficient for that purpose.

There is not certainly in this case any direct evidence of a contract that the hands employed in the vessel would look exclusively to the captain for payment, and I have not been able in the evidence to find circumstances sufficiently strong to induce me to infer one.   It is shown, to be sure, that two of the hands knew of the engagement between the captain and the owners, that the former would pay the crew, and furnish provisions for

46*

the table, upon certain terms contained in the contract between him and them; but it does not appear when they acquired this knowledge, or that they were willing or agreed, that their right to look to the vessel and owners should be destroyed by it. With regard to the rest of the crew, there is not, in my opinion, any competent evidence that they had any knowledge whatever of this contract between the owners and the captain.

It seems to me impossible to say, looking to the scrupulous suspicion with which contracts and stipulations with seamen are watched by the courts, for the purpose of affording them that protection which from their improvident habits they but too frequently require, that they should, upon such proof, be construed out of the most important security for their hard earned wages. *Abbott*, 722, *note* 11, *and* 745, *note* 11; *Nickerson* vs. *Schooner Monsoon*, 5 *Law Reporter*, 416.

My opinion then is, that the seamen in this case have a lien on the proceeds of the vessel, and are entitled to a preference over the other creditors.

This disposes of claims from No. 11 to 25, inclusive, and of No. 35, all of which are for seamen's wages.

Another class of creditors who have come in for payment out of this fund, are those who have furnished supplies for the vessel, but they claim only to be general creditors, the supplies having been furnished in the home port.

That for the necessary supplies for a vessel, furnished by order of the master, the owner is liable, seems to be settled, and when he seeks to escape such liability, he must make out, by satisfactory proofs, the facts upon which he claims the exemption. If he insists that he is not liable, he must show that the credit was given to others; as, by similar proof, the master also may avoid a responsibility which generally rests upon him as well as upon the owner. *Abbott*, 168, 169; 3 *Kent's Com.*, 133, *note b*.

If the owner can make out, by evidence, that the credit was given to the master *alone*, for such supplies, if it appears there was a special promise taken from him and relied upon, the owner would not be liable; and on the other hand, the master

would not be liable, if a like promise of the owner was taken and relied upon. *Abbott*, 168, *note* 11 ; 5 *Law Reporter*; 116.

Unless evidence of this description can be furnished, it is believed to be very well established that the owners are liable for necessary supplies furnished the ship by order of the master.

The question, then, in this case, is, have these owners succeeded in establishing, by evidence, that the persons who furnished supplies for this vessel, did so upon the credit of the master alone ?   Looking to all the proof upon this point, and giving it a fair consideration, I cannot agree with the counsel, that credit for these supplies was given exclusively to the master, without which, the owner was unquestionably liable.   In fact, with regard to the claims numbered 9 and 10, the idea of the exclusive liability of the captain could not have been entertained by these owners, as it appears by the records, that they confessed decrees for those claims at March term last, in the United States District Court for the Maryland District.

It would be a consumption of time and space for which there would be no compensating advantage, to enter upon an examination of the proof, upon which my conclusions upon this question of fact are formed, and I therefore content myself with saying, that I am not satisfied that the parties who furnished these supplies, contracted to look exclusively to the captain for their money, and, therefore, my opinion is, that such of the creditors of this class as may succeed in proving their claims, will be entitled to come in upon the fund as general creditors, after the satisfaction of the liens and preferences already referred to.

In addition to the claims of the seamen and of the parties who furnished supplies for the vessel, certain claims have been filed, founded upon the drafts of the captain on the company. These drafts are dated on the 7th of December, 1846, and the vessel ceased to run on the 12th day of the same month ; and on the same day a resolution was passed by the directors of the company, directing these drafts to be charged to the account of the captain, and credited to the parties entitled to receive the same, and in case the sum due the captain from the

company, should be insufficient to pay them, that then they should be paid *pro rata.*

The parties to whom these drafts were given were directors and officers of the company, who must have known at the time of its embarrassed condition, and that the crew and provision men had not been paid. It appears also by the evidence of the captain, that he gave them with reluctance, if not under absolute coercion, and that they were given by him for money borrowed from the parties in whose favor they were drawn. Under the circumstances attending the drawing and direction for the payment of these drafts, I do not think they are entitled to any very great degree of favor, but yet it seems to me, they should not be wholly excluded from all participation in the fund out of which they were to be paid. It appears that there was at that time due the captain from the company, about $2400, which accrued in the year 1846, for his pay and compensation in that year. The contract between him and the company, as disclosed by the proof, was, that for a fixed compensation the captain was to find the vessel in hands and provisions, and to pay generally the expense of navigating her, that the contract was duly performed by both parties until the year 1846, when the company failed to comply with its engagement to the captain, and the latter was consequently unable to pay the crew, &c.

I have already expressed the opinion, that the crew have a lien on the proceeds of the vessel, and that those who furnished the supplies, though they have no lien, are to be treated as creditors at large, and entitled to such dividend as may be fairly apportioned to them.

As, however, according to the contract between the company and the master, the latter was to pay the hands and the provision men, and as the sum due the captain from the company is the primary fund for that purpose, my opinion further is, that whatever fund may have been found to be due from the company to the captain when the drafts in question were given, should be apportioned pro rata between the crew, the provision men, and the holders of the drafts referred to—that for what-

ever balances may remain due to the crew, after crediting their proportion of the amount due the captain as aforesaid, they shall be paid out of the proceeds of the sales made by the receiver, as preferred creditors—that the parties who furnished supplies for the vessel shall be entitled to receive a distributive share of the balance of those proceeds, for the sums which may remain due them, after the application to their payment of their proportion of the amount due from the company to the captain ; but that the holders of the drafts given by the captain on the 7th of December, 1846, shall receive nothing but the dividend of the amount due the captain, distributed as before explained, as I think all they can fairly claim is to participate in that fund.

The only remaining claim which it is necessary to notice, is that presented by Alexander J. Marshall, numbered 53 in the statement of claims by the Auditor. Without stopping to inquire whether the obligation upon which this claim is founded is the obligation of the company, or of the gentleman who signed the same as president, or whether the terms upon which it was given have been complied with or not, I am of opinion, that regarding this obligation as properly executed to bind the company, it is still not a valid instrument as against them, for the want of authority to enter into such an engagement.

It has been already stated, that this company was incorporated "for the purpose of establishing and conducting a line of steamboats and stages or carriages between Baltimore and Fredericksburg, and the several ports and places on the Rappahannock, and on the rivers and waters of the Chesapeake bay, for the conveyance of passengers and transportation of merchandise and other articles."

The object of the charter was to authorize the transportation of passengers and merchandise between Baltimore and Fredericksburg ; but the purpose contemplated by the improvement, in aid of which the obligation under consideration was given, as declared upon the face of the instrument, was to open the Rappahannock river, and render it navigable, &c., to the basin in or near Fredericksburg. The improvement proposed to be

made was *above* the Virginia terminus of the route, between which terminus and Baltimore, the boats were to run, and was not, therefore, for that reason, within the authority conferred upon the company by their charter; but even if the improvement had been between the termini, I do not think it would have been within the powers granted by the act of incorporation.

The Court of Appeals have decided, that corporations are not only incapable of making contracts which are forbidden by their charters, but in general they can make none which are not necessary, either directly or indirectly, to effect the objects of their creation. *The Penn. Del. and Md. Steam Navigation Company* vs. *Dandridge, 8 Gill & Johns.*, 248; and that the corporation itself may, in an action brought against it upon such contract, deny its power to enter into it.

This case, I think, is decisive of the question, and the claim therefore founded upon the contract referred to, must be disallowed and rejected.

[No appeal was taken from this order.]